**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEE ARLIN EASTER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-05-509-F |
| ) | |
| LARRY DAMERON,[1] R.C. DANIELS, and ) | |
| WADE LOWERY, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. Plaintiff alleges that Defendants used excessive force in executing a search warrant and in arresting him. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Currently pending before the Court is the Motion for Summary Judgment submitted by Defendants Damron and Daniel [Doc. #49] (Defendants' Motion) and Plaintiff's Motion for Preliminary Injunction [Doc. #70]. Plaintiff has not responded to the Motion for Summary Judgment.[2] Defendants Damron and Daniels have objected to Plaintiff's Motion

---

[1]This Defendant identifies himself as "Lary Damron."

[2]On May 26, 2006, Plaintiff filed a document entitled "Response to Motion for Summary Judgment [Doc. #54]. This document is not, however, a substantive response to Defendants' motion. Plaintiff contends in this document that the "clerks office in this Court, with their hindering the service of subpoenas on this case" put Plaintiff "at a disadvantage and unable to lawfully respond with counter documents." *See* Doc. #54 at 1. On July 3, 2006, Plaintiff moved for an extension of time "to reply to the Report and Recommendation by the State." *See* Doc. # 60. On July 10, 2006, this Court granted Plaintiff an extension of time until August 7, 2006, to file a substantive response to Defendants' Motion for Summary Judgment. Plaintiff has not responded.

for Preliminary Injunction [Doc. #71] (Defendants' Objection).[3]  For the reasons set forth herein, it is recommended that the Motion for Summary Judgment of Defendants Damron and Daniels be granted.  It is further recommended that Plaintiff's Motion for Preliminary Injunction be denied.

I.      **Plaintiff's Motion for Preliminary Injunction**

In his Motion for Preliminary Injunction, Plaintiff seeks an order from this Court enjoining Defendants and the District 2 Task Force in its official capacity from "any sale or transfer of (any value) real and personal assets pending the final appeal."  Motion for Preliminary Injunction at 1.

Preliminary injunctive relief is an extraordinary and drastic remedy that "'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d ed. 1995)).  To obtain a preliminary injunction, the movant must persuade the court:  (1) that there is a substantial likelihood that he will succeed on the merits of his claim; (2) that irreparable harm will occur if preliminary injunctive relief is not granted; (3) that the threatened harm to the movant outweighs whatever damage preliminary injunctive relief may inflict upon the opposing

---

[3]Defendant Lowery, who has not been served, filed a document entitled "Special Appearance of Wade Lowery to Object to Plaintiff's Motion for Preliminary Injunction" [Doc. #72]. Defendant Lowery noted the lack of personal jurisdiction and adopted the arguments and authority of Defendants Damron and Daniels. By Order of the District Court on May 2, 2006, the claims against Defendant Lowery were dismissed without prejudice for insufficiency of service of process. *See* Order [Doc. #48].

parties; and (4) that an injunction would not have adverse consequences to the public interest. *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

In this case, Plaintiff has not persuaded the Court that any of the above-mentioned factors weigh in his favor. If this Report and Recommendation is adopted, Defendants' Motion for Summary Judgment will be granted. Therefore, Plaintiff has not shown a substantial likelihood of success on the merits before this Court or on appeal. Plaintiff also has failed to show that he would suffer any harm, much less irreparable harm, if Defendants disposed of personal or real property before the conclusion of this case. Because Plaintiff has not shown that he is likely to suffer any harm absent preliminary injunctive relief, he cannot show that his interests outweigh the interests of the Defendants. It is therefore recommended that Plaintiff's Motion for Preliminary Injunction be denied.

**II.     Background and Claims Presented in Plaintiff's Complaint**

Plaintiff alleges in his Complaint that he was subjected to excessive force when Defendants, whom he identifies as officers of the "District 2 Drug Task Force," entered his home and arrested him on May 9, 2003. Plaintiff describes the incident in his Complaint:

> On May 9, 2003, Plaintiff was living at 208 S. 3rd, Sayre, Oklahoma. On this same date, Plaintiff was in his kitchen at the residence when someone knocked on his door, real loud[.] Plaintiff started for the door to answer it. Before he could even arrive at the door, someone kicked the door two (2) times. The door did not come open from these kicks. When Plaintiff got to the door, he turned the knob to open the door and the door flew open and almost knocked him down. At this time, R.C. Daniels, came into the house and pointed a gun in Plaintiff's face and told him to hit the floor. As Plaintiff turned to get down

on the floor, Daniels struck him in the head[4] and knocking him to the floor, broke and dislocated his shoulder. Plaintiff then informed the officers that his shoulder was hurt and to not hurt him any more. Daniels told him to shut up and get on down because he wasn't hurt. Wade Lowery then jumped on Plaintiff's back and attempted to jerk his broken arm back behind his back. Plaintiff screamed and after the third time, Lowery finally told him to get up off the floor. Plaintiff was then hand cuffed with his hands in front. Plaintiff was then taken to the Sayre Memorial Hospitol [sic] where he was diagnosed with a broken and dislocated shoulder. Plaintiff was eventually released on an O.R. bond because of the medical issues.

Complaint [Doc. #1] at 2.

In Count I, Plaintiff contends that his due process and equal protection rights were violated by the officers' use of undue force during his arrest. Plaintiff contends that Defendant Daniels' kicking the door and hitting him with enough force to knock him down and break his shoulder constitutes unnecessary and excessive force. Plaintiff further contends that Defendant Lowery's jumping on his back and jerking his broken arm three times also constitutes excessive force. Complaint at 3.

In Count II, Plaintiff claims that he was subjected to cruel and unusual punishment based on the officers' alleged use of undue and excessive force during his arrest. Plaintiff states that Defendants Daniels and Lowery used excessive force causing Plaintiff to receive a broken and dislocated shoulder and then jerking him around with undue force and further

---

[4] In his deposition testimony, Plaintiff stated that Defendant Daniels struck his shoulder, not his head. Plaintiff testified that Defendant Daniels hit him with an open hand hard enough to knock him forward. Plaintiff testified that the inmate who drafted the Complaint incorrectly stated that Defendant Daniels hit Plaintiff's head. Defendant's Motion, Ex. C at 50-52. In Defendants' Statement of Facts, Defendant Daniels denies striking Plaintiff, but for purposes of the summary judgment motion, he does not dispute Plaintiff's deposition testimony. *See* Defendants' Motion at 3, 5-6.

4

inflicting pain.  Plaintiff states that Defendant Damron is liable for the use of excessive force "because he was present."  Complaint at 3.

### III.     Defendants' Motion for Summary Judgment

Defendants Daniels and Damron assert that they are entitled to qualified immunity. They contend that Plaintiff has failed to show that they violated a constitutional right to be free of unreasonable searches and seizures when they restrained Plaintiff before and during the search of Plaintiff's home.  In support of their motion, Defendants set forth undisputed facts based on Plaintiff's Complaint and his deposition testimony.  *See* Defendants' Motion at 1-5.  There is no dispute concerning the validity of the search warrant giving Defendants the authority to enter and search Plaintiff's residence.  In his deposition, Plaintiff testified that Defendant Daniels "stuck a gun right up to my head and hollered, 'Hit the floor.'" Defendants' Motion, Ex. C (Deposition of Dee Arlin Easter) at 49.  Plaintiff testified that he turned to get down on the floor, and Defendant Daniels hit him in the shoulder with what felt like an open hand.  Plaintiff further described the physical contact as "kind of like a push." *Id.* at 49, 51.  Plaintiff then testified that he "kind of spun to the right, and . . . went to the right far enough that when [he] went down, [he] went sideways and caught [himself] with [his] left hand, and that's when . . . [he] was just catching all [his] weight with that one arm." *Id.* at 51-52.  Plaintiff testified that Deputy Wade Lowery tried three times to handcuff Plaintiff behind his back.  *Id.* at 59.  Deputy Lowery then helped Plaintiff get up and handcuffed Plaintiff in front.  *Id.* at 65-66, 68.

**IV.    Standard of Review**

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. *See Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006) (*citing Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If, on the other hand, a violation could be shown, the next step in the qualified immunity sequence is to ask whether the constitutional right was clearly established. *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* at 202.  Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

> If the plaintiff successfully establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.

*Cortez v. McCauley*, 438 F.3d at 988 (*citing Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Tenth Circuit has explained:

> When applying this standard, [a court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party. Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (*citing Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (quotation marks, citations, and brackets omitted)).

**V.    Analysis**

Because Plaintiff's claims are based on actions of the Defendants during a search and arrest, his claims arise under the Fourth Amendment, which guarantees citizens the right to be free from unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968); *Graham v. Connor*, 490 U.S. 386, 388 (1989) (claims of excessive force in the context of arrests should be analyzed under the Fourth Amendment's objective reasonableness standard); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Courts evaluate reasonableness under

the Fourth Amendment by examining the totality of circumstances of the particular seizure. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  *See also Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Conner*, 490 U.S. at 396 (internal quotation and citation omitted).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Walker v. City of Orem*, 451 F.3d 1139, 1159 (10th Cir. 2006) (*quoting Graham v. Connor*, 490 U.S. at 396).  Moreover, "[t]he reasonableness of an officer's conduct must be assessed from the perspective of a reasonable officer on the scene . . . [who] may be forced to make split-second judgments under stressful and dangerous conditions."  *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (quotations omitted).

In this case, Defendants lawfully entered a residence to conduct a search pursuant to a valid search warrant, not knowing exactly who would be in the residence or whether the occupants would be armed.  It was in the midst of this intrinsically stressful and dangerous situation that Officer Daniels allegedly pushed Plaintiff to the floor and Deputy Lowery attempted three times to handcuff Plaintiff behind his back.  The governmental interest in quickly securing Plaintiff's house to protect the officers from potential danger is sufficient to justify Defendant Daniels' having pushed Plaintiff.  *See United States v. Merkley*, 988 F.2d

1062, 1064 (10th Cir. 1993) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself . . . ." (citations omitted)).  There is no indication that Defendant Daniels intended for Plaintiff to fall to the left and hurt his shoulder.  Rather, Plaintiff's injury is attributable to his position when he fell and not to the amount of force used by Defendant Daniels.  Moreover, Plaintiff himself testified that all three officers "quit being rough" when they realized he had hurt his arm:

> Q. Okay.  Now it sounds like the way you explained it to me that once Deputy Lowery believed that you actually was hurt, that he was very careful and handcuffed you in front?
>
> A. Yeah, he quit being – they quit being rough right there, all of them.  Dameron never did – I never did hear him say a word.  He never did do nothing[.]

Defendants' Motion, Ex. C at 68.  Under the circumstances in this case, the limited physical contact Daniels used to secure the area and subdue Plaintiff was reasonable.  That Plaintiff's shoulder was dislocated as a result of his fall is unfortunate, but the injury Plaintiff sustained does not prove that Defendant Daniels used excessive force in pushing Plaintiff to the floor.  The conclusion that Defendant Daniels did not use excessive force forecloses any derivative claim that Defendant Damron is liable for failing to intervene on Plaintiff's behalf.  *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ("a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983").  It is therefore recommended that Defendants' Motion for Summary Judgment be granted.

## RECOMMENDATION

It is recommended that the Motion for Summary Judgment of Defendants Daniels and Damron [Doc. #49] be granted and judgment entered in their favor. It is further recommended that Plaintiff's Motion for Preliminary Injunction [Doc. #70] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by November  2nd , 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  13th  day of October, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE